IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-02625-RBJ

BEVERLY DIANE MORGAN,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner for the Social Security Administration,

      Defendant.

## ORDER

      This matter is before the Court on review of the Commissioner's decision denying claimant Beverly Morgan's application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision for further findings.

**I. Standard of Review**

      This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla,

but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Facts

Ms. Morgan, who was born on January 19, 1960, resides in Colorado and has previously worked as a warehouse worker, mailroom sorter, and paper cutter.

### A. Procedural History

On May 12, 2010, Ms. Morgan filed an application for Supplemental Security Income disability benefits, alleging disability beginning on January 14, 2007. The claim was initially denied on December 3, 2010. The claimant then filed a request for a hearing, which was held on April 19, 2012 in front of Administrative Law Judge Timothy Snelling. The ALJ denied the claimant's application for benefits on May 17, 2012, and the Commission denied his request for review on July 26, 2013. Ms. Morgan filed a timely appeal in this Court.

### B. Medical History

The record contains evidence of Ms. Morgan's degenerative disc disease/degenerative joint disease of the lumbar spine and cervical spine, osteoarthritis of the right hip and right knee, hypertension, gastroesophageal reflux disease (GERD), and an adjustment disorder with mixed emotional features. *See* R. at 23–24. Most relevant to this appeal are the opinions of Dr. Bekelman, Dr. Hanna, and Dr. Regan.

As of November of 2011, Dr. Bekelman had seen Ms. Morgan monthly since of May of 2009. R. at 1092, 1097. The doctor found that the patient's prognosis was "poor" and "unlikely to improve substantially." R. at 1093. He noted that "anxiety, depression, and pain interfere

with her ability to work," and that she cannot handle "normal work stress." R. at 1094. Additionally, her mood would interfere with her ability to work with others. R. at 1094. Dr. Bekelman also found that the claimant had "no useful ability to function" in a number of categories related to the ability to work, including maintaining regular attendance and being punctual, completing a normal workday without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number of breaks, accepting instructions, getting along with coworkers, responding appropriately to changes in a routine work setting, and handling work stress. R. at 1094. The claimant was also "seriously limited" or "unable to meet competitive standards" in a number of other categories. R. at 1094–95. The doctor concluded that Ms. Morgan had none/mild restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace. R. at 1096.

Dr. Hanna examined Ms. Morgan at National Jewish Health's Gastroenterology Clinic. R. at 1098. The doctor instructed her on an "antidumping diet" to address the symptoms associated with the claimant's dumping syndrome. R. at 1098–99. Specifically, he recommended that she eat five to six meals a day and outlined a sample eating schedule with meals at 9 am, 11 am, 1 pm, 3 pm, 5 pm, and 7 pm. R. at 1100.

Turning to Dr. Regan's opinion, the doctor noted that Ms. Morgan reported several years of groin, thigh, and hip pain, and that she was attending physical therapy for her back and hip. R. at 592. She found that Ms. Morgan had osteoarthritis in her right hip, recommended that she use a cane, and concluded that she could perform "a wide range of jobs that do not involve prolonged periods of sitting and standing, where she has some flexibility to sit as needed." R. at

3

592–93.

### C. The ALJ's Decision

The ALJ issued an unfavorable opinion after evaluating all of the evidence according to the Social Security Administration's standard five-step process. At step one, he found that Ms. Morgan had not engaged in substantial gainful activity since May 12, 2010, the application date. R. at 23. Next, at step two, the ALJ found that the claimant had the following medically severe combination of impairments: degenerative disc disease/degenerative joint disease of the lumbar spine and cervical spine, osteoarthritis of the right hip and right knee, hypertension, gastroesophageal reflux disease (GERD), and an adjustment disorder with mixed emotional features. R. at 23–24. At step three, the ALJ concluded that Ms. Morgan did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 24. He then found that the claimant had the residual functional capacity ("RFC") to perform a wide range of light work, except she was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting and standing/walking for six hours in an eight-hour workday, occasionally climbing ramps and stairs and kneeling on the right knee, and no more than frequent interaction with the general public. R. at 25–26. Additionally, the claimant could never climb ladders, ropes, and scaffolds and had to avoid concentrated exposure to pulmonary irritants. R. at 25–26. Turning to step four, the ALJ found that Ms. Morgan was not capable of performing any past relevant work. R. at 29. Finally, at step five, he found that, considering the claimant's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. R. at 30. He thus concluded that the claimant had not

been under a disability.  R. at 31.

### III. Discussion

The claimant contends that the ALJ made three errors in his opinion denying benefits: (1) he did not apply the correct legal standard in determining the weight that he afforded the opinions of Dr. Bekelman and Dr. Hanna, (2) his decision did not apply the correct legal standard and was not supported by substantial evidence in determining the credibility of Ms. Morgan's statements, and (3) his decision did not apply the correct legal standard and was not supported by substantial evidence in determining the claimant's RFC.  As explained below, the Court agrees with the first argument and a portion of the third argument.

#### A.  The Opinions of Dr. Bekelman and Dr. Hanna

First, the claimant argues that the ALJ failed to apply the correct legal standard in determining the weight afforded to the opinions of Dr. Bekelman and Dr. Hanna, both of whom were treating physicians.  Under SSR 96-2p, "[i]f a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted."  In order to reject a treating physician's opinion, an ALJ must provide "specific, legitimate reasons." *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (internal citation omitted).

Furthermore, even if a treating source medical opinion does not meet the controlling-weight standard, it should not necessarily be rejected.  SSR 96-2p.  "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling

weight." *Id.* The 20 C.F.R. § 404.1527 factors that the ALJ must weigh are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)). Although the ALJ must consider all of the factors, the Tenth Circuit has made clear that he need not explicitly discuss each one. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In the present case, the ALJ afforded "little weight" to Dr. Bekelman's opinion. R. at 29. The following excerpt contains his entire explanation for doing so:

> The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Although the doctor stated that the claimant is 'disabled,' it is not clear that the doctor was familiar with the definition of 'disability' contained in the Social Security Act and regulations. For example, the doctor stated that the claimant would have difficulty doing simple decisions and being aware of hazards. However, a person that lives alone is able to make simple decisions and avoid normal hazards in the home.

R. at 29. Although the ALJ could have given a more detailed analysis of why the opinion was not entitled to controlling weight, he did point out that Dr. Bekelman's assessment was inconsistent with the claimant's living on her own; thus the opinion was inconsistent with other substantial evidence in the record. Moreover, the finding that much of the doctor's opinion was based on the claimant's assertions rather than objective medical evidence supports the decision not to afford it controlling weight. *See White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001), *as amended on denial of reh'g* (Apr. 5, 2002). For these reasons, the Court finds the ALJ's

6

explanation for why Dr. Bekelman's opinion was not given controlling weight satisfactory.

However, the analysis does not stop there. After finding that the opinion should not be afforded controlling weight, the ALJ was next required to weigh the relevant factors from 20 C.F.R. § 404.1527 to determine what weight to give it. SSR 96-2p. There is no indication in the opinion that the ALJ considered the first, second, third, or fifth factors. *See* R. at 29. "Although the ALJ's decision need not include an explicit discussion of each factor, see *Oldham*, 509 F.3d at 1258, the record must reflect that the ALJ considered every factor in the weight calculation." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). Here, it is unclear if the ALJ considered the majority of the factors he was required to weigh in making the determination that Dr. Bekelman's opinion should be afforded little weight. For this reason, the ALJ failed to follow the applicable legal standard, and his opinion must be remanded on this basis.

Turning to Dr. Hanna's opinion, the claimant contends that the ALJ erred in failing to discuss the doctor's findings and his recommendation that Ms. Morgan eat several small meals per day. In particular, she argues that her need for frequent meals is incompatible with an eight-hour workday with limited breaks. The ALJ did not evaluate Dr. Hanna's report or undertake an analysis of what weight to afford it.[1] *See* R. at 23–31. "An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)). Moreover, because Dr. Hanna was a treating physician, the ALJ was required to determine what weight to afford it under the framework described above. *See Goatcher*, 52 F.3d at 289–90. Since the ALJ did not evaluate Dr. Hanna's opinion, the Court

---

[1] The ALJ did cite Dr. Hanna's opinion in support of the statement that Ms. Morgan "describes having constant heartburn and experiences vomiting." R. at 27. However, this does not amount to a discussion of what weight to afford it; indeed, the government does not argue so in its brief. *See* ECF No. 17 at 20.

7

must remand the decision on this basis.[2]

### B. The Credibility of Ms. Morgan's Statements

Next, the claimant argues that the ALJ did not apply the correct legal standard in assessing Ms. Morgan's credibility and that the credibility assessment was not supported by substantial evidence. "[T]he adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p. The ALJ must consider a number of factors in making a determination about a claimant's credibility:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p (citing 20 C.F.R. § 416.929(c)(3)). In addition, the ALJ must "consider all of the evidence presented, including information about [the claimant's] prior work record, . . . evidence submitted by [his or her] treating or nontreating source, and observations by [the Commission's] employees and other persons." 20 C.F.R. § 416.929(c)(3). In reviewing an ALJ's credibility determination, courts must keep in mind that "[c]redibility determinations are peculiarly the

---

[2] The government argues that the claimant has not shown why her eating requirements could not be satisfied during the typical breaks in an eight-hour workday. ECF No. 17 at 20. However, because an RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[, meaning] 8 hours a day, for 5 days a week, or an equivalent work schedule," SSR 96-8p, the need for frequent breaks could impact an individual's RFC. Indeed, during questioning by the claimant's attorney, the vocational expert testified that frequent breaks for small meals would "typically not" be accommodated in the jobs that the claimant could perform. R. at 71–72.

province of the finder of fact, and [a court should] not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotations and citations omitted).

In the present case, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of [the alleged] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. at 27. In making this determination, the ALJ relied on the following evidence: (1) despite reporting that she did few chores, the claimant lived alone and had not reported any particular help in maintaining the residence; (2) the claimant described "daily activities that are not limited to the extent one would expect," including picking up normal items when shopping; (3) she cancelled or missed doctor appointments on a number of occasions; (4) her work history was sporadic, raising a question as to whether her continuing unemployment was actually due to medical impairments; and (5) although the claimant had taken appropriate medications, the dosage level was low and she took only over-the-counter medication for her pain. R. at 27.

Thus the ALJ's credibility assessment took some of the factors listed in SSR 96-7p into account. In particular, he cited evidence related to the first factor (the fact that the claimant lived alone and could pick up items while shopping) and the fourth factor (claimant's low dosage of appropriate medications and the fact that she took only over-the-counter medication for her pain). Furthermore, her missed doctor appointments and sporadic work history constitute other evidence in the record that may be considered under 20 C.F.R. § 416.929(c)(3). In sum, all of the evidence on which the ALJ relied was appropriately considered and supports the ALJ's

conclusion.[3] The Tenth Circuit has held that "an ALJ need not make a formalistic factor-by-factor recitation of the evidence when making her credibility assessment." *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013). Moreover, "merely technical omissions in the ALJ's reasoning do not dictate reversal." *Id.* at 824. Because the ALJ cited various pieces of evidence in line with the requirements of 20 C.F.R. § 416.929(c)(3), the Court finds that the ALJ's credibility determination is free from legal error and is supported by substantial evidence.[4] Thus the Court declines to remand the decision on this basis.

### C. Ms. Morgan's Residual Functional Capacity

Finally, the claimant contends that the ALJ's RFC determination did not apply the correct legal standards and was not supported by substantial evidence. As an initial matter, the Court notes that on remand the RFC analysis may be impacted by any additional weight given to Dr. Bekelman's and Dr. Hanna's opinions in light of the discussion above. Beyond this issue, the claimant appears to make two specific arguments concerning the RFC determination: (1) the ALJ did not follow the applicable law in relying on the fact that the claimant lives alone and (2) in light of Dr. Regan's opinion, the ALJ's findings that Ms. Morgan can perform a wide range of light work and sit/stand for six hours in an eight-hour workday are not supported by substantial

---

[3] The government spends much of the relevant section of its brief citing additional evidence that the ALJ did not discuss. *See* ECF No. 17 at 14–16. However, the Court cannot consider such post-hoc justifications for the ALJ's determination. *See, e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("the government supplies some reasons that it believes would support the ALJ's RFC finding. The ALJ did not provide these explanations, however. . . . [T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

[4] Furthermore, it does not appear that the ALJ failed to consider any significantly probative evidence on which he chose not to rely. *See Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (ALJ must discuss probative evidence that he rejects). Indeed, the claimant does not make any clear argument to this effect. *See* ECF No. 16 at 10–12. The only additional evidence that the claimant's brief mentions concerns "the side effects of the medications which limit the type and dose of medications which Ms. Morgan can tolerate." *Id.* at 11. However, the claimant provides no citation to the record to support her contention that such evidence should have been considered, *see id.*, and, in any event, this single additional piece of information would not significantly alter the ALJ's analysis.

evidence.  *See* ECF No. 16 at 12–13.

Beginning with the first argument, the ALJ pointed to the fact that the claimant lives alone several times in his RFC assessment.  *See* R. at 27–29.  Specifically, he noted that:

- The claimant alleged performing few, if any, household chores, but also reported that she lives alone and does not have any particular help in maintaining her residence.  R. at 27.
- The fact that claimant lived alone "verified Dr. Regan's opinion regarding the claimant's ability to perform a wide range of jobs."  R. at 28.
- In finding that Dr. Wanstrath's opinion was entitled to great weight, the ALJ cited the fact that the claimant lives alone as a factor supporting this determination.  R. at 28.
- In deciding to afford Dr. Bekelman's opinion little weight, the ALJ noted that the fact that Ms. Morgan lived alone was inconsistent with the doctor's determination that she would have difficulty making simple decisions and being aware of hazards.  R. at 29.

These are proper uses of the fact that Ms. Morgan lives alone.  In making a determination about a claimant's credibility, an ALJ must consider the entire case record if it undermines assertions made in his or her testimony; here, the record includes the fact that the claimant lives alone.  SSR 96-7p.  *See also Skaggs v. Apfel*, 189 F.3d 478 (10th Cir. 1999) (fact that claimant lived alone supported ALJ's rejection of testimony concerning plaintiff's limitations).  Thus the ALJ properly relied on this fact in assessing the claimant's credibility with regard to the assertion that she performs few, if any, household chores.  Additionally, in determining what weight to afford a physician's opinion, the ALJ must consider whether the opinion is consistent with the record as a whole.  *Goatcher*, 52 F.3d at 288–90.  In the second, third, and fourth instances listed above, the ALJ relied on the fact that the claimant lives alone as a factor in his weight determinations; thus these are also appropriate uses of that fact.

The claimant cites to Tenth Circuit case law for the proposition that sporadic performance of household tasks or work does not establish that a person is capable of substantial

11

gainful activity.[5] *See, e.g.*, *Frey v. Bowen*, 816 F.2d 508, 516–17 (10th Cir. 1987) ("Nor does the ALJ's citation of 'daily activities' indicate substantial evidence refuting Frey's complaint of disabling pain or its credibility. . . . [S]poradic performance does not establish that a person is capable of engaging in substantial gainful activity."). While that is correct, living alone is not a sporadic activity, unlike the examples discussed in the case law that the claimant cites (such as performing a few household chores, working for an hour or so as a janitor, and jogging). *See id.* Nor did the ALJ make the direct inference that because Ms. Morgan lives alone, she can perform substantial gainful activity. *See* R. at 27–29. Rather, the opinion relies on the fact that the claimant lives alone in specific instances in which the ALJ must consider whether particular evidence is consistent with the record as a whole. For this reason, the Court finds that the ALJ's citations to the fact that the claimant lives alone did not violate the applicable legal standards.

Turning to the claimant's second argument, the Court agrees that the ALJ's conclusions that Ms. Morgan can "perform a wide range of light work" and "stand[]-walk[] for six hours each in an eight-hour day," R. at 25, are not supported by substantial evidence. As the claimant points out, Dr. Regan found that Ms. Morgan had osteoarthritis in her right hip, recommended that she use a cane, and concluded that she could perform "a wide range of jobs that do not involve prolonged periods of sitting and standing, where she has some flexibility to sit as needed." R. at 592–93. The ALJ discussed these findings in his RFC assessment and afforded the opinion great weight, R. at 28, yet nevertheless concluded that Ms. Morgan could perform a wide range of light work and stand-walk for six hours at a time, R. at 25.[6] Furthermore, Dr.

---

[5] Some of the claimant's case citations are incomplete. *See* ECF No. 16 at 13. Claimant's counsel is reminded to include information about the reporter in short-form citations, not just a party name and page number.

[6] "[M]ost light jobs—particularly those at the unskilled level of complexity—require a person to be standing or walking most of the workday." SSR 83-14.

Regan's opinion appears to be the only evidence cited that is directly relevant to the claimant's ability to stand and walk, and the government does not point to any other evidence relevant to this finding in its brief.  *See* R. at 26–29; ECF No. 17 at 12–13.  For this reason, the Court finds that the conclusions that Ms. Morgan can perform a wide range of light work and stand-walk for six hours in an eight-hour workday are overwhelmed by other evidence in the record.  Thus the decision must be remanded on this basis.

### IV. Conclusion

The Court finds that the ALJ did not follow the applicable legal standards in determining what weight to afford Dr. Bekelman's and Dr. Hanna's opinions.  Additionally, part of the RFC assessment is not supported by substantial evidence.  Nonetheless, it is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time.  *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).  Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 23rd day of February, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge